UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

ADRIAN L. MITCHELL,

                    Plaintiff,

        v.

CAROLYN W. COLVIN, Commissioner of
 Social Security,

                    Defendant.

_____

**REPORT**
**and**
**RECOMMENDATION**

**14-CV-00418A(F)**

APPEARANCES:      LAW OFFICES OF KENNETH R. HILLER
                              Attorneys for Plaintiff
                              TIMOTHY HILLER, of Counsel
                              6000 North Bailey Avenue
                              Suite 1A
                              Amherst, New York 14226

                              WILLIAM J. HOCHUL, JR.
                              UNITED STATES ATTORNEY
                              Attorney for Defendant
                              SERGEI ADEN
                              Assistant United States Attorney, of Counsel
                              Federal Centre
                              138 Delaware Avenue
                              Buffalo, New York 14202, and

                              STEPHEN P. CONTE
                              Regional Chief Counsel - Region II
                              United States Social Security Administration
                              Office of the General Counsel, of Counsel
                              26 Federal Plaza
                              Room 3904
                              New York, New York 10278

## JURISDICTION

This action was referred to the undersigned by Honorable Richard J. Arcara on October 24, 2014. (Doc. No. 8).  The matter is presently before the court on motions for judgment on the pleadings, filed on October 23, 2014, by Plaintiff (Doc. No. 7), and on December 22, 2014, by Defendant (Doc. No. 9).

## BACKGROUND

Plaintiff Adrian L. Mitchell ("Plaintiff" or "Mitchell"), seeks review of Defendant's decision denying him Disability Insurance Benefits ("DIB") ("disability benefits") under, Title II of the Social Security Act ("the Act"), and Supplemental Security Income Benefits ("SSI") benefits under Title XVI of the Act.  In denying Plaintiff's application for disability benefits, Defendant determined that Plaintiff had the severe impairments of lumbar sprain/strain, disc bulges at Plaintiff's L2-L3[1] and L3-L4 disc segments, disc protrusion at Plaintiff's L4-L5 disc segment, mild straightening of Plaintiff's lumbar lordosis, fracture of the transverse process of Plaintiff's L4 vertebra, chronic left-sided L4-L5 radiculopathy, borderline intellectual functioning, myofascial pain syndrome, a learning disorder in reading and decoding, reading comprehension, and arithmetic calculations, and marijuana abuse (R. 23), but that Plaintiff did not have an impairment or combination of impairments within the Act's definition of impairment.  (R. 24).[2] Defendant further determined that Plaintiff had the residual functional capacity to

---

[1] The lumbar spine is located in the area of an individual's lower back, and is comprised of five disc segments numbered L1 through L5, the sacrum bone, and coccyx (tailbone).

[2] "R" references are to the page numbers of the Administrative Record submitted in this case for the Court's review.

perform sedentary work with the limitation of no frequent balancing or repetitive

bending, stooping, crouching, crawling and kneeling, and limited to simple repetitive

unskilled work that does not involve the operation of hazardous machinery or heavy

equipment, with no significant changes in work procedure.  (R. 28).  As such, Plaintiff

was found not disabled, as defined in the Act, at any time from the alleged onset date of

January 1, 2010, through the date of the Administrative Law Judge's decision on

September 28, 2012.


## PROCEDURAL HISTORY

Plaintiff filed applications for disability benefits on July 27, 2010.  (R. 45-46, 128).

The applications were initially denied by Defendant on October 7, 2010 (R. 60), and

pursuant to Plaintiff's request filed on October 13, 2010 (R. 82), a hearing was held

before Administrative Law Judge Nancy Pasiecznik ("Pasiecznik" or "the ALJ"), on

November 29, 2011, in Buffalo, New York.  (R. 54-57).  Plaintiff, who was absent

without excuse from the hearing, was represented by Kevin Canali, Esq. ("Canali")

during the hearing.  (R. 54-57).  A second hearing was held before ALJ Pasiecznik on

April 13, 2012, where Plaintiff, again absent without excuse, was represented by Canali.

(R. 44-51).  The ALJ's decision denying the claim was rendered on September 28,

2012.  (R. 20-35).

Plaintiff requested review of the ALJ's decision by the Appeals Council, and the

ALJ's decision became Defendant's final decision when the Appeals Council denied

Plaintiff's request for review on April 4, 2014.  (R. 1-7).  This action followed on June 2,

2014, with Plaintiff alleging that the ALJ erred by failing to find him disabled.  (Doc. No. 1).

On October 23, 2014, Plaintiff filed a motion for judgment on the pleadings ("Plaintiff's motion"), accompanied by a memorandum of law (Doc. No. 7) ("Plaintiff's Memorandum"). Defendant filed, on December 22, 2014, Defendant's motion for judgment on the pleadings ("Defendant's motion"), accompanied by a memorandum of law (Doc. No. 9) ("Defendant's Memorandum").  On January 9, 2015, Plaintiff filed Plaintiff's Reply Memorandum of Law (Doc. No. 10 ) ("Plaintiff's Reply").  Oral argument was deemed unnecessary.  Based on the following, Plaintiff's motion should be GRANTED.

## **FACTS**[2]

Plaintiff, Adrian L. Mitchell, ("Mitchell" or "Plaintiff"), was born on May 30, 1985, completed special education classes through ninth grade in school (R. 243), and worked most recently as a cleaner for a temporary agency and fast food worker from January 3, 2009 until May 3, 2009 (R. 284), when Plaintiff left work as a result of his impairments.  Plaintiff alleges that he is not able to work because he suffers from a back impairment, poor leg movement, and little to no ability to bend, sit or stand as a result of a May 3, 2009 car accident.  (R. 242).

Relative to the Plaintiff's alleged disability onset date of January 1, 2010, on May 3, 2009, Plaintiff presented to Erie County Medical Center ("E.C.M.C."), in Buffalo, New York, after being injured in a car accident (R. 381), where Timothy Jorden, Jr., M.D.

---

[2] Taken from the pleadings and the administrative record.

("Dr. Jorden"), reviewed a computerized tomography scan ("CT") of Plaintiff's lumbrosacral spine that revealed mild broad-based disc protrusion at Plaintiff's L4-L5 disc segment indenting the thecal sac, a moderate posterior bulge at Plaintiff's L2-L3 and L3-L4 disc segments, and mild straightening of Plaintiff's lumbar lordosis with no foraminal stenosis (narrowing of spinal foramen).  (R. 373).

On May 13, 2009, Joseph M. Kowalski, M.D. ("Dr. Kowalski"), reviewed an X-ray of Plaintiff's lumbar spine, and evaluated Plaintiff with sacrilization (fusion) of Plaintiff's L5 vertebra, and opined that previous studies that indicated a transverse fracture (broken perpendicular to the way the bone runs) of Plaintiff's L4 vertebra would require confirmation by a CT scan. (R. 375).

On June 23, 2009, Plaintiff sought treatment for back pain at E.C.M.C. where Melissa Kuhn, M.D. ("Dr. Kuhn"), diagnosed Plaintiff with transverse process fracture at Plaintiff's L4 vertebra.  (R. 415).

On November 21, 2009, Plaintiff sought treatment from E.C.M.C. for a right wrist fracture suffered when Plaintiff was hit with a bottle (R. 413), where  Dr. Jorden reviewed an X-ray of Plaintiff's wrist and fitted Plaintiff with a cast that was later removed on December 22, 2009.  (R. 418).

On November 23, 2009, Plaintiff' visited Jerry J. Tracy, M.D. ("Dr. Tracy"), a pain specialist, and reported sharp stabbing pain in Plaintiff's left lumbar region.  (R. 377). Dr. Tracy counseled Plaintiff on the hazard of using marijuana and Lortab, diagnosed Plaintiff with lumbago and myofascial pain syndrome, and provided a bupivacaine (nerve anesthetic) to Plaintiff's L4 vertebra.  (R. 379).

On November 30, 2009, Thomas Ryan, Ph.D., ("Dr. Ryan"), completed a

consultative psychiatric evaluation on Plaintiff, and assessed Plaintiff with impaired

concentration and attention, impaired recent and remote memory skills, deficient

cognitive functioning, somewhat poor insight and judgment as a result of Plaintiff's

cognitive impairment, and diagnosed Plaintiff with adjustment order on Axis I,[3] with

depressed mood, mild mental retardation, and back and right hand problems on Axis III.

(R. 341-42).  Dr. Ryan opined that Plaintiff's prognosis was fair with regard to Plaintiff's

depression, and guarded with regard to Plaintiff's level of intellectual functioning.  (R.

342).  Upon administering a Wide Range Achievement Test III[4] ("WRAT III") test to

Plaintiff, Dr. Ryan evaluated Plaintiff with a second grade level reading score of 52.  Dr.

Ryan administered a Wechsler Intelligence Scale Fourth Edition[5] ("WAIS IV")

intelligence test to Plaintiff and evaluated Plaintiff with a verbal comprehension score of

4, and working memory of 3, vocabulary and information score of 4, and arithmetic

score of 5.  (R. 345).  Plaintiff's IQ scores measured 66 on verbal comprehension IQ, 63

on perceptual reasoning, 66 on working memory, with a full-scale IQ measured at 59,

which Dr. Ryan noted that he prorated as a result of Plaintiff being unable to complete

the processing speed tasks as a result of having his right hand in a cast.  (R. 345).  Dr.

Ryan opined that Plaintiff demonstrated no significant limitation to understanding and

---

[3] The DSM-IV multiaxial scale is used to assess an individual's mental and physical condition on five axes, each of which refers to a different class of information: Axis I clinical disorders, Axis II personality disorders, Axis III general medical conditions, Axis IV psychosocial and environmental stressors, and Axis V global assessment of functioning.  American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders-IV-TR* ("DSM-IV"), at 27 (4th ed. 2000).
[4] WRAT III is a screening measure used to evaluate achievement in reading recognition, spelling, and arithmetic.
[5] WAIS IV is an intelligence test that measures cognitive ability in adults and older adolescents.

following simple instructions, performing simple tasks, maintaining attention and concentration, and maintaining a regular schedule, but that Plaintiff exhibited significant limitations to Plaintiff's ability to learn new tasks, perform complex tasks, and make adequate decisions, and exhibited a moderate limitation to Plaintiff's ability to deal with stress.  (R. 345).  Dr. Ryan diagnosed Plaintiff with Axis I adjustment disorder with depressed mood, Axis II mild mental retardation, and Axis III back problems, and recommended that Plaintiff seek out services for the developmentally disabled, and attend counseling treatment for Plaintiff's depression.   (R. 346).

On November 30, 2009, Kathleen Kelly, M.D. ("Dr. Kelly"), completed an internal medical examination on Plaintiff who reported activities of daily living that include daily cooking and cleaning with assistance from Plaintiff's aunt, and daily laundry, shopping, and personal hygiene.  (R. 348).  Upon physical examination, Dr. Kelly evaluated Plaintiff's lumbar spine with 75 degrees upon flexion, 10 degrees upon extension, with lateral flexion and full bilateral rotation.  A straight leg raising test measured positive results at 65 degrees bilaterally with Plaintiff in the supine position, and negative with Plaintiff in the sitting position.  Plaintiff's reflexes measured equal in Plaintiff's upper and lower extremities with no motor or sensory deficits.  (R. 349).  Dr. Kelly diagnosed Plaintiff with disc disease of the lumbar spine without radiculopathy, weakness, or bladder or bowel compromise, and acute right wrist fracture, and opined that Plaintiff refrain from activities that require balance or working around sharp or heavy equipment, and noted that Plaintiff would require comfort breaks when lifting, carrying, reaching for

heavy objects, and pushing or pulling on heavy objects even with the upper left extremity.  (R. 349-50).

On December 24, 2009, D. Mangold, M.D. ("Dr. Mangold"), a psychiatrist and medical reviewer with the Social Security Administration, completed a psychiatric review technique form on Plaintiff, and opined that Plaintiff's adjustment disorder with depressed mood did not meet the criteria for a listed impairment, and assessed Plaintiff with a moderate degree of limitation to Plaintiff's activities of daily living, difficulties in maintaining social functioning, maintaining concentration, persistence and pace, and no evidence of repeated episodes of decompensation.  (R. 351-61).

Plaintiff attended physical therapy treatment with Chiropractor Geoffrey Gerow, D.C. ("Dr. Gerow"), from April 2010 through September 2010.  (R. 424-51).

On April 28, 2010, Plaintiff underwent a magnetic resonance imaging scan ("MRI") of Plaintiff's lumbar spine that, upon evaluation, Gregg Feld, M.D. ("Dr. Feld"), opined revealed transitional configuration at Plaintiff's lumbosacral junction, mild disc bulge at Plaintiff's L3-L4 disc segment without stenosis, mild bulge at Plaintiff's L4-L5 disc segment without stenosis that showed mild foraminal encroachment.  Dr. Feld recommended that Plaintiff undergo nerve conduction studies for further evaluation.  (R. 479).

On May 11, 2010, Bernard R. Beaupin, M.D. ("Dr. Beaupin"), a spine specialist with Pinnacle Orthopedics, completed a physical examination on Plaintiff and evaluated Plaintiff with herniated lumbar disc, lumbar sprain and strain, and myofascial pain syndrome.  (R. 453).  A straight leg raising test conducted the same day resulted in pain

8

on both sides of Plaintiff's spine, with normal range of motion, sensation, and reflexes, leading Dr. Beaupin to opine that Plaintiff was disabled.  (R. 453-54).

On May 20, 2010, Gary Smith, D.C. ("Dr. Smith"), completed a lower extremity electromyogram ("EMG") test and nerve conduction study ("NCS") on Plaintiff that revealed chronic left L4-L5 radiculopathy, no evidence of lumbrosacral plexopathy (nerve disorder), entrapment syndrome, or diffuse lower extremity neuropathy.  (R. 457).

On June 16, 2010, Kevin M. Nightingale, D.C. ("Dr. Nightingale"), reviewed Plaintiff's medical records, and completed an independent chiropractic examination on Plaintiff, and evaluated Plaintiff with a positive straight leg raising test measured at 45 degrees on the right, and 60 degrees on the left side bilaterally, a positive Yeoman's test (test to measure pain in the sacroiliac joint) indicative of sacroiliitis, and opined that Plaintiff showed no evidence of chiropractic disability and that Plaintiff was capable of working and carrying out activities of daily living.  (R. 476).

On June 21, 2010, Cameron B. Huckell, M.D. ("Dr. Huckell"), a spinal surgeon with Pinnacle Orthopedics, completed a physical examination on Plaintiff, and assessed Plaintiff's lumbar spine with 70 to 80 degree range of motion upon flexion, 20 to 30 degrees upon extension, with right and left bending measured at 30 to 35 degrees, and right and left rotation measured at 40 to 45 degrees, a positive straight leg raising test measured at 75 degrees on both sides, intact sensation, and normal mood and affect. (R. 466).  Dr. Huckell opined that the injuries that Plaintiff sustained in the car accident

on May 3, 2009 were significant, that Plaintiff was disabled, and diagnosed Plaintiff with herniated disc without myelopathy and lumbar radiculitis.  (R. 468-69).

On July 12, 2010, in correspondence to the claim department of Plaintiff's insurance company, Dr. Gerow rebutted Dr. Nightingale's opinion that Plaintiff was not disabled.  (R. 482).

On July 29, 2010, Dr. Feld reviewed an X-ray of Plaintiff's left foot that showed mild lateral soft tissue swelling.  (R. 480).

During a follow-up appointment with Dr. Beaupin on November 3, 2010, Plaintiff reported constant back pain exacerbated by housework that required forward bending, improved with chiropractic treatment and medication, with numbness and weakness of Plaintiff's left knee.  (R. 541).  Dr. Beaupin evaluated Plaintiff with a positive Yeoman's[6] test and straight leg raising test, assessed Plaintiff with a herniated lumbar disc, lumbar sprain strain syndrome, myofascial pain syndrome, and opined that Plaintiff remained disabled.  (R. 542).

On January 2, 2011, Dr. Gerow completed a medical evaluation on Plaintiff and assessed Plaintiff with a moderate restriction to lumbar flexion, mild to moderate restriction to lumbar extension, a positive straight leg raising test measured at 60 degrees on the left and 63 degrees on the right, moderate to marked restriction to left lateral flexion, and moderate restriction to right lateral flexion.  (R. 498-97).  Dr. Gerow evaluated Plaintiff with weak muscle strength of the left extensor hallucies (big toe), muscle spasms of Plaintiff's right lumbosacral region, diagnosed Plaintiff with lumbar

---

[6] Yeoman's test is used to assess if an individual has sacroiliitis (inflammation in the sacroiliac joint).

disc herniation, lumbar radiculopathy, lumbar sprain/strain, and cervical sprain/strain, and opined that Plaintiff's back impairment would likely be aggravated by activities of daily living or new trauma.  (R. 498).  A lumbar residual functional capacity questionnaire completed the same day showed Plaintiff able to sit or stand for twenty minutes at a time, sit for a total of two hours in an eight-hour day, stand a total of six hours in an eight-hour day, able to walk for one city block, and the requirement to take a ten minute walk every thirty minutes of a workday.  Dr. Gerow opined that Plaintiff would require a job that permitted the shifting of positions between sitting, standing and walking, would require unscheduled breaks during an eight-hour workday, would likely miss two days of work each month as a result of his back impairment, but would otherwise be able to sustain full-time employment.  (R. 491).

## DISCUSSION

### 1.    Disability Determination Under the Social Security Act

An individual is entitled to disability insurance benefits under the Social Security Act if the individual is unable

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. . ..  An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.

42 U.S.C. §§ 423(d)(1)(A) & (2)(A), and 1382c(a)(3)(A) & (C)(I).

Once a claimant proves he or she is severely impaired and unable to perform any past relevant work, the burden shifts to the Commissioner to prove there is alternative employment in the national economy suitable to the claimant. *Parker v. Harris,* 626 F.2d 225, 231 (2d Cir. 1980).

**A.      Standard and Scope of Judicial Review**

The standard of review for courts reviewing administrative findings regarding disability benefits, 42 U.S.C. §§ 401-34 and 1381-85, is whether the administrative law judge's findings are supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence requires enough evidence that a reasonable person would "accept as adequate to support a conclusion." *Consolidated Edison Co. v. National Labor Relations Board*, 305 U.S. 197, 229 (1938).

When evaluating a claim, the Commissioner must consider "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability (testified to by the claimant and others), and . . . educational background, age and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)). If the opinion of the treating physician is supported by medically acceptable techniques and results from frequent examinations, and the opinion supports the administrative record, the treating physician's opinion will be given controlling weight. *Schisler v. Sullivan*, 3 F.3d 563, 567 (2d Cir. 1993); 20 C.F.R. § 404.1527(d); 20 C.F.R. § 416.927(d).

The Commissioner's final determination will be affirmed, absent legal error, if it is supported by substantial evidence. *Dumas,* 712 F.2d at 1550; 42 U.S.C. §§ 405(g) and

1383(c)(3).  "Congress has instructed . . . that the factual findings of the Secretary,[1] if supported by substantial evidence, shall be conclusive."  *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

The applicable regulations set forth a five-step analysis the Commissioner must follow in determining eligibility for disability insurance benefits.  20 C.F.R. §§ 404.1520 and 416.920.  *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464 (2d Cir. 1982).  The first step is to determine whether the applicant is engaged in substantial gainful activity during the period for which benefits are claimed.  20 C.F.R. §§ 404.1520(b) and 416.920(b).  If the claimant is engaged in such activity the inquiry ceases and the claimant is not eligible for disability benefits.  *Id.* The next step is to determine whether the applicant has a severe impairment which significantly limits the physical or mental ability to do basic work activities as defined in the applicable regulations.  20 C.F.R. §§ 404.1520(c) and 416.920(c).  Absent an impairment, the applicant is not eligible for disability benefits.  *Id.*  Third, if there is an impairment and the impairment, or an equivalent, is listed in Appendix 1 of the regulations and meets the duration requirement, the individual is deemed disabled, regardless of the applicant's age, education or work experience, 20 C.F.R. §§ 404.1520(d) and 416.920(d), as, in such a case, there is a presumption the applicant with such an impairment is unable to perform substantial gainful activity.[2]  42 U.S.C. §§

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.

[2] The applicant must meet the duration requirement which mandates that the impairment must last or be expected to last for at least a twelve-month period.  20 C.F.R. §§ 404.1509 and 416.909.

423(d)(1)(A) and 1382(c)(a)(3)(A); 20 C.F.R. §§ 404.1520 and 416.920.  *See also*

*Cosme v. Bowen*, 1986 WL 12118, * 2 (S.D.N.Y. 1986); *Clemente v. Bowen*, 646

F.Supp. 1265, 1270 (S.D.N.Y. 1986).

However, as a fourth step, if the impairment or its equivalent is not listed in

Appendix 1, the Commissioner must then consider the applicant's "residual functional

capacity" and the demands of any past work. 20 C.F.R. §§ 404.1520(e), 416.920(e).  If

the applicant can still perform work he or she has done in the past, the applicant will be

denied disability benefits.  *Id.*  Finally, if the applicant is unable to perform any past

work, the Commissioner will consider the individual's "residual functional capacity," age,

education and past work experience in order to determine whether the applicant can

perform any alternative employment.  20 C.F.R. §§ 404.1520(f), 416.920(f).  *See also*

*Berry,* 675 F.2d at 467 (where impairment(s) are not among those listed, claimant must

show that he is without "the residual functional capacity to perform [her] past work").  If

the Commissioner finds that the applicant cannot perform any other work, the applicant

is considered disabled and eligible for disability benefits.  20 C.F.R. §§ 404.1520(g),

416.920(g).  The applicant bears the burden of proof as to the first four steps, while the

Commissioner bears the burden of proof on the final step relating to other employment.

*Berry,* 675 F2d at 467.  In reviewing the administrative finding, the court must follow the

five-step analysis to determine if there was substantial evidence on which the

Commissioner based the decision.  *Richardson*, 402 U.S. at 410.

**B.**     **Substantial Gainful Activity**

The first inquiry is whether the applicant engaged in substantial gainful activity. "Substantial gainful activity" is defined as "work that involves doing significant and productive physical or mental duties" done for pay or profit.  20 C.F.R. § 404.1510(a)(b). Substantial work activity includes work activity that is done on a part-time basis even if it includes less responsibility or pay than work previously performed.  20 C.F.R. § 404.1572(a).  Earnings may also determine engagement in substantial gainful activity. 20 C.F.R. § 404.1574.  In the instant case, the ALJ determined that Plaintiff did not engage in substantial gainful activity since January 1, 2010, the date of Plaintiff's disability application.  (R. 23).  Plaintiff does not contest this determination.

**C.**     **Severe Physical or Mental Impairment**

The second step of the analysis requires a determination whether Plaintiff had a severe medically determinable physical or mental impairment that meets the duration requirement in 20 C.F.R. § 404.1509 and significantly limits the Plaintiff's ability to do "basic work activities."  The Act defines "basic work activities" as "abilities and aptitudes necessary to do most jobs," and includes physical functions like walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; capacities for seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b) ("§ 1521"), 416.921(b).

In this case, the ALJ determined that Plaintiff has the severe impairments of lumbar sprain/strain, disc bulges at Plaintiff's L2-L3 disc segments, disc protrusion at Plaintiff's L4-L5 disc segments, mild straightening of the lumbar lordosis, fracture of the transverse process of Plaintiff's L-4 vertebra, chronic left L4-L5 radiculopathy, borderline intellectual functioning, myofascial pain syndrome, learning disorder in reading and decoding,[7] reading comprehension, arithmetic calculations and marijuana abuse as defined under 20 C.F.R. § 1520(c) and 416.920(c), but that none of Plaintiff's severe impairments, either alone or in combination, met or equaled a listed impairment.  (R. 23).  Plaintiff does not contest the ALJ's step two disability finding.

**D.      Listing of Impairments, Appendix 1**

The third step is to determine whether a claimant's impairment or impairments are listed in the regulations at Appendix 1 of 20 C.F.R. Pt. 404, Subpt. P ("The Listing of Impairments").  If the impairments are listed in the Appendix, and the duration requirement is satisfied, the impairment or impairments are considered severe enough to prevent the claimant from performing any gainful activity and the claimant is considered disabled.  20 C.F.R. §§ 404.1525(a), 416.925(a); *Melville v. Apfel*, 198 F.3d. 45, 51 (2d Cir. 1999) ("if the claimant's impairment is equivalent to one of the listed impairments, the claimant is considered disabled").  The relevant listings of impairments in this case includes 20 C.F.R. Pt. 404, Subt. P, Appendix 1, § 12.05 ("§ 12.05") (Mental

---

[7] Decoding is the ability to identify words through letter and word recognition.

Retardation),[8] and 20 C.F.R. Pt. 404, Subt. P, Appendix 1, § 1.04 ("§ 1.04") ("Disorders of the Spine").  The undersigned proceeds to address each impairment in turn.

**Borderline Intellectual Functioning**

In the instant case, the ALJ determined that Plaintiff had the severe impairment of borderline intellectual functioning and a learning disorder in reading and decoding, reading comprehension, and arithmetic calculations under step two of the disability analysis (R. 23), but improperly analyzed Plaintiff's intellectual impairments under §§ 12.02, 12.04, or 12.06 of the listed impairments.  (R. 26).  Specifically, the ALJ determined that substantial evidence supports that the Plaintiff's full-scale IQ test score – 59 – did not accurately reflect Plaintiff's actual mental capacity as Dr. Mangold opined, exhibit marked restriction to Plaintiff's activities of daily living, social functioning, concentration, persistence or pace, experience any episodes of decompensation throughout the disability review period, or have a residual disease process that resulted in such marginal adjustment that even a minimal increase in mental demands or a change to Plaintiff's environment would result in decompensation (criteria directed to disability under §§ 12.02, 12.04, and 12.06 of the listed impairments), and that Plaintiff was able to function without a highly supportive living arrangement.  (R. 27).

Plaintiff contends that the ALJ's step three determination was error, as the ALJ failed to provide reasons to support the weight the ALJ afforded to the opinions of Drs. Mangold and Ryan, favoring Dr. Mangold's opinion of Plaintiff's mental capacity over that of Dr. Ryan's, and that as a result of such error the ALJ failed to properly evaluate

---

[8] On September 3, 2013, the Social Security Administration adopted the term "intellectual disability" to replace "mental retardation."  *See* http://www.gpo.gov/fdsys/pkg/FR-2013-08-01/html/2013-18552.htm.

Plaintiff's mental impairment under §§ 12.05 and 12.05C of the listed impairments as

required.  Plaintiff's Memorandum at 15-19.  Plaintiff further contends that the ALJ

violated the treating physician rule, improperly evaluated Plaintiff's unsuccessful work

attempt as past relevant work, abused the ALJ's discretion in finding that Plaintiff failed

to provide good cause for not attending two administrative hearings, and failed to

provide substantial evidence to support the ALJ's findings at steps four and five of the

disability review analysis.  Plaintiff's Memorandum at 18-30.  The undersigned proceeds

to review Plaintiff's mental impairment under only the relevant listed impairment.

**§ 12.05 Intellectual Disability**

In order to be found disabled under § 12.05, a disability claimant must first

provide evidence of two threshold criteria that the claimant exhibits as follows:

> significantly subaverage general intellectual functioning with deficits in adaptive
> functioning initially manifested during the developmental period; *i.e.*, the evidence
> demonstrates or supports onset of the impairment before the age of 22.

20 C.F.R. Pt. 404, Subpt. P. App. 1 § 12.05 ("§ 12.05").

In the absence of evidence to indicate otherwise, a disability claimant's qualifying

IQ score as an adult may suffice to meet the claimant's *prima facie* burden to establish

significantly sub-average intellectual functioning initially manifested before age 22.

*Talavera v. Astrue*, 697 F.3d 145, 152 (2d Cir. 2012).  This court has considered the

age restriction of § 12.05, and determined

> it must be noted that listing 12.05(B) also requires a finding that plaintiff's mental
> disability have manifested itself before the age of twenty-two.  Absent such a
> finding, plaintiff cannot be considered disabled under such listing, regardless of
> her current IQ test score.  Nevertheless, inasmuch as mental retardation is
> considered to be a lifelong condition, "an IQ score is presumed to accurately

reflect an individual's IQ throughout a person's entire life, regardless of the individual's age when the IQ test is administered."

*Figueroa Rivera v. Apfel*, 2000 WL 1568596, at *9-10 (W.D.N.Y. Sept. 29, 2000) (Elfvin, J.).

In this case, Plaintiff was born on May 30, 1985 (R. 343), and Plaintiff's full scale IQ score of 59, undisputed by Defendant, measured by Dr. Ryan on November 30, 2009, when Plaintiff was 24 years old (R. 345), establishes that Plaintiff had significantly sub-average intellectual functioning before Plaintiff turned 22 years old.  *See Santiago v. Astrue,* 2008 WL 2405728, at *3 (W.D.N.Y. June 11, 2008) (where no contrary evidence exists in the record, IQ measured at age 30 is a valid indicator of IQ during the claimant's development period before age 22).

The second threshold criterion required for a finding of disability under § 12.05, requires substantial evidence to establish a claimant's deficits in adaptive functioning, and includes a claimant's effectiveness in areas such as social skills, communication, and daily living skills manifested prior to age 22.  *See Vargas v. Astrue*, 2011 WL 9518014 at *12 (S.D.N.Y. Nov. 8, 2011) (citing *West v. Commissioner of Social Security Administration*, 240 Fed. Appx. 692, 698 (6th Cir. 2007)).  Courts have found circumstantial evidence such as a claimant attending special education classes, dropping out of school before graduation, or exhibiting difficulties in reading, writing or math sufficient to infer the claimant had deficits in adaptive functioning prior to age 22 sufficient to meet the requirement of § 12.05. *See Rohrback v. Colvin*, 2016 WL 1156449, at *3 (W.D.N.Y. Mar. 24, 2016); *MacMillan v. Astrue*, 2009 WL 4807311, at *6 (N.D.N.Y. Dec. 7, 2009) (enrollment in special education classes and graduating with an

IEP suggests deficits in adaptive functioning)).  In this case, Plaintiff, quit high school after ninth grade (R. 333), had been enrolled in special education classes while attending school (R. 40, 333-36), was evaluated with reading at a second grade level (R. 344), and exhibited serious difficulties in writing and arithmetic.  (R. 333-34). Accordingly, substantial evidence that Plaintiff exhibited significantly sub-average general intellectual functioning manifested before Plaintiff turned 22 years old, together with evidence that Plaintiff exhibited deficits in adaptive functioning, establish that Plaintiff meets both threshold criteria for disability under § 12.05.

**§ 12.05B  IQ of 59 or Less**

Upon providing evidence to support the two threshold criteria under § 12.05, to be deemed disabled *per se* under the explicit requirements of § 12.05B, a claimant must also provide evidence of "[a] valid verbal, performance, or full-scale IQ of 59 or less." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05B ("12.05B").

In this case, on November 30, 2009, upon administering the WRAT-III achievement test to Plaintiff, Dr. Ryan measured Plaintiff's full scale IQ score at 59.  (R. 345).  Dr. Ryan, moreover, validated Plaintiff's full scale IQ score by noting that he, Dr. Ryan, had prorated Plaintiff's full scale IQ score to accommodate for Plaintiff's inability to complete the processing speed tasks as a result of having a cast on Plaintiff's dominant right hand.  *Id.*  As is manifest from the regulations, a disability claimant who meets the threshold criteria under § 12.05, and provides evidence of an IQ score of 59, is not required to provide evidence of any other deficiencies.  In this case, the ALJ properly equates an IQ of 59 as commensurate to only three percent of the total

population (R. 27), which the Defendant characterizes as evidence of an individual with "extreme intellectual deficiencies."  Defendant's Memorandum at 20.  In contrast, for disability pursuant to § 12.05C, a claimant with a full-scale IQ of 60 through 70 must also provide evidence of a physical or mental impairment imposing an additional or significant work-related limitation of function.  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05C.

Here, the ALJ adopted Dr. Mangold's opinion that Plaintiff exhibited an IQ higher than as tested based on Plaintiff's ability to engage in activities of daily living.  (R. 363). Significantly, neither Dr. Mangold nor the ALJ rejected Dr. Ryan's full scale IQ test of Plaintiff as improperly conducted, and the ALJ's failure to accept Dr. Ryan's finding that Plaintiff's IQ was 59 and properly recognize its controlling effect under § 12.05B, caused the ALJ to analyze Plaintiff's mental impairment under the incorrect criteria for disability (*i.e.,* restrictions to Plaintiff's ability to engage in activities of daily living and other criteria listed under paragraph "B" under § § 12.02, 12.04 and 12.06 of the listed impairments (R. 27)), a misapplication that constitutes clear legal error.  Defendant fails to provide authority, and the court's research finds none to support the ALJ's heightened criteria to establish disability under § 12.05B as well as the ALJ's unexplained failure to apply § 12.05B.  As noted, Discussion, *supra*, at 19, deficits to adaptive functioning under § 12.05B include only those initially required under the second threshold of § 12.05, *i.e.*, those initially manifested during an individual's developmental period as demonstrated before age 22, *see* 20 C.F.R. Pt. 404, Subpt. P. App. 1 § 12.05, which Plaintiff has by

substantial evidence clearly established, and the listing does not include those deficits during an applicant's later life.

As demonstrated, Discussion, *supra*, at 18-22, substantial evidence therefore supports that Plaintiff meets the criteria under § 12.05B of the listed impairments, and Plaintiff is disabled.

Under 42 U.S.C. § 405(g), the district court has the power to affirm, modify, or reverse the ALJ's decision with or without remanding for a new hearing, and reversal and remand for calculation of benefits is warranted in instances where, as here, an ALJ analyzes a claimant's impairment under the incorrect Listing of Impairments. *See Rodriguez o/b/o, V.R. v. Commissioner of Social* Security, 2014 WL 4792076, at *1 (S.D.N.Y. Sept. 25, 2015) (remand where ALJ analyzed disability under incorrect listing).  In this case, and based on the court's finding that Plaintiff is disabled because of Plaintiff's intellectual disability, having met the criteria for disability under § 12.05B of the Listing of Impairments, and given the ALJ's manifest error in applying to Plaintiff the adaptive functioning requirements applicable under §§ 12.02, 12.04, and 12.06 and inapplicable to Plaintiff, the matter should be remanded for calculation of benefits, and no consideration of Plaintiff's other contentions relating to asserted disability under § 1.04 based on Plaintiff's spinal condition  is required.  *See Olejniczak v. Colvin*, 2016 WL 1469682, at *4 (W.D.N.Y. April 15, 2016) (standard for directing a remand for calculation of benefits is met when the record persuasively demonstrates the claimant's disability); *see also*; *Parker v. Harris,* 626 F.2d 225, 235 (2d Cir. 1980) (remand for a new hearing unnecessary where new hearing serves no purpose)); *Muntz v. Astrue*,

540 F. Supp. 2d 411, 421 (W.D.N.Y. 2008) (remand for calculation of benefits appropriate where further administrative proceedings or a new hearing would serve no purpose))).  Plaintiff's motion for judgment on the pleadings (Doc. No. 7) should therefore be GRANTED.

### <u>CONCLUSION</u>

Based on the foregoing, Defendant's motion (Doc. No. 9) should be DENIED. Plaintiff's motion (Doc. No. 7) should be GRANTED, and the matter remanded for calculation of benefits in accordance with this Report and Recommendation.


Respectfully submitted,


/s/ *Leslie G. Foschio*

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      June 10, 2016
            Buffalo, New York

Pursuant to 28 U.S.C. §636(b)(1), it is hereby

**ORDERED** that the Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to the Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of the Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**<u>Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.</u>**

*Thomas v. Arn,* 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of the Report and Recommendation to the attorneys for the Plaintiff and the Defendant.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:     June 10, 2016
           Buffalo, New York